STATE OF NEBRASKA, APPELLEE, V. DAN GROOMS, ALSO KNOWN AS DANIEL N. GROOMS, APPELLANT.

224 N. W. 2d 781

Filed January 2, 1975. No. 39555.

Charles Plantz, for appellant.

Clarence A. H. Meyer, Attorney General, and Ralph H. Gillan, for appellee.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Appellant, Daniel N. Grooms, was convicted on two counts of uttering a forged instrument. We condense appellant's assignments of error to four: (1) Insufficiency of the evidence; (2) admission of photographic copies of the forged instruments; (3) admission of statements made by appellant to his grandmother; and (4) the refusal to declare a mistrial. We affirm.

On or about May 24, 1973, appellant, the grandson of Frank Grooms, presented a $500 check payable to himself to the Gordon State Bank. The check was purportedly drawn by Frank Grooms on his account at that bank. On or about July 7, 1973, appellant presented another check payable to himself, purportedly drawn by Frank Grooms. This check was for $800. Frank Grooms was subsequently reimbursed by the bank for the $1,300 represented by the two checks, on a claim that the checks were forgeries. This prosecution followed.

Frank Grooms was 93 years old and practically blind. He had banked at the Gordon State Bank for many years. He still occasionally signed checks on his account, although he couldn't fill them out. His wife also had authority to sign checks on the account, but when she did she signed her own name.

In August of 1973, Mrs. Grooms discovered two charges against the account, one for $500, the other for $800. There were no checks included for those amounts. She and her husband were not living at their mailing address during the period in question, and their statements were delivered to them by their son and grandson. Appellant delivered at least some of the statements to

Mrs. Grooms. On some of them she remembered the envelopes had been opened and resealed shut.

Mr. and Mrs. Grooms contacted the bank about the charges and learned that checks for those amounts, purportedly signed by Frank Grooms payable to appellant, had been charged to the account. Both Frank Grooms and his wife testified they did not owe appellant anything. They had not bought anything from him for either $500 or $800. Frank Grooms denied having written appellant any check in those amounts or that he gave anyone else authority to do so. He further testified he never gave appellant permission to sign his name to checks. During 1973, he did not sign a check for appellant or give one to appellant to fill out.

The Gordon State Bank followed a regular procedure relating to checks drawn on accounts in that bank. After a check was cashed, it was processed through a proof machine and a computer machine, microfilmed, and then stored in the vault with the customer's statement. Approximately every 30 days the statement, with the checks, was mailed to the customer. The bank did not keep the original canceled checks longer than 30 days. The only record it had of the checks was the microfilm which was stored in its vault. When the questioned checks were not found the bank procured enlargements of the microfilms it had made. These were introduced into evidence over objection.

Frank Grooms, because of his poor eyesight, was unable to examine the questioned signatures. Mrs. Frank Grooms, appellant's grandmother, testified that Frank did not make out checks. He merely signed them. She usually made out checks for him. She did not make out either the $500 or the $800 check payable to Dan Grooms. For the last 5 years somebody else had filled in the portion of the check above Mr. Grooms' signature. Whoever did that had to indicate to him where to sign the check. She is the one who keeps the records and audits the bank statements. When she checked the May, June,

and July statements, she found the $500 and the $800 charges, but there were no checks in the statements for those amounts. On cross-examination she testified positively that the signature on the $500 check was not Frank Grooms' signature.

Mrs. Grooms further testified she talked to appellant after the preliminary hearing about the trial that was coming up. She asked him if anybody else was in on the deal, and appellant said there wasn't.

Robert Kehr, an officer of the Gordon State Bank, talked to appellant about the checks in August 1973. His testimony is as follows: "I told him that he was really in trouble because of writing these checks on his grandfather. And he told me that he had talked to his grandfather that morning and that he had made a settlement with him on these."

Frank Tolstedt, the executive vice president of the Gordon State Bank, testified the appellant called him in October about the checks. He testified as follows: "A He told me that he was calling in reference to the checks - with reference to the checks that we were - in other words, that we had to pay for. In other words, the checks that we paid Mr. Frank Grooms back on. * * * Q Well, just none other. What did he say? The best you can remember. The substance of it. A Well, he said that he would like to take care of the checks. Q And what did you say to him? A I said it was too late."

Appellant did not testify. Ben Garcia, an examiner of questioned documents, was the only witness called by him. Garcia was of the opinion that Frank Grooms and not appellant wrote "Frank Grooms" on the two questioned checks. He testified that appellant did write his own name as payee on the $800 check. He conceded that a signature could be traced and that he would not be able to detect it on a photostatic copy. His attention was called to the fact that both of the questioned signatures appear to have been made with

something broader than a ballpoint pen. Without the original it was not possible to testify as to the nature of the pen.

"In determining the sufficiency of the evidence to sustain the conviction in a criminal prosecution, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence." State v. Hiatt (1973), 190 Neb. 315, 207 N. W. 2d 678.

The evidence is conflicting on the issue of forgery. The State's evidence is to the effect that the checks were not signed by Frank Grooms or anyone authorized by him. Frank Grooms specifically denied that he had signed the checks for appellant. Appellant's expert testified he thought the checks were signed by Frank Grooms and not the appellant. He did concede that appellant had written his name as payee on one of the checks. On cross-examination the expert admitted that signatures could possibly be traced and he would not be able to detect that on a photostatic copy. The expert was at a disadvantage in that he was working with photocopies of the questioned documents, not the originals. The blowups of the photocopies would indicate that the writing on the questioned checks was heavier and broader than that on the comparison documents. The question of forgery was one for the jury. It was not required to accept the opinion of the expert witness, as it obviously did not.

While appellant was not required to testify, if the checks were genuine or if there was some reasonable explanation for them, it would appear that some attempt would have been made in the cross-examination of Frank Grooms and Mrs. Grooms to bring out this explanation. Appellant presented the checks to the bank and received payment on them. There is not even a hint of an explanation in this record as to why the 93-year-old grandfather gave appellant, if such was the fact, $1,300.

No attempt was made to explain the statements made to the grandmother and the other witnesses. While appellant did not admit the forgery in the statements, the inference is clearly present that there was something wrong with the checks. Certainly, his conversations with the three witnesses are inconsistent with any theory of innocence. The jury could reasonably have believed that if the checks had been legitimate or he were not involved he would have made some protestation of innocence on at least one of the occasions.

The evidence was sufficient to permit the jury to find the checks involved were not signed by Frank Grooms or by anyone with authority to sign for him. From an examination of the photocopies of the two checks, we cannot say that the jury was wrong in this respect. There is no hint in the evidence that anyone other than appellant was involved. Actually, in response to a direct question appellant told his grandmother no one else was involved. Appellant's expert testified that appellant's name as payee on the $800 check was written by appellant. A jury question was presented. There is no merit to appellant's first assignment of error.

Appellant complains that the original forged instruments were not introduced but that photographic copies were admitted in evidence. The evidence was sufficient to show the unavailability of the original instruments. They were missing from Frank Grooms' bank statement. There was evidence in the record from which the jury could infer that possibly the appellant himself had abstracted them. The statements had been in his home; he had delivered statements to his grandparents; and the envelopes had been opened and resealed before they were delivered. While the evidence is purely circumstantial, it was sufficient to account for the unavailability of the original instruments. Secondary evidence of the contents of a written instrument may be introduced where proof is made that the writing has been lost or destroyed, or is otherwise unavailable. See

Clough v. North Central Gas Co. (1948), 150 Neb. 418, 34 N. W. 2d 862.

Appellant complains of the introduction of his grandmother's testimony that she asked him if there was anyone else in on the deal and he replied that there was not. He asserts it is prejudicial because what she meant by asking the question is not clear; what the deal was is not specified; and what appellant meant by his answer is not clear. In context, it is reasonably clear what the conversation was about. It took place after the preliminary hearing and at a time when appellant and his grandmother were talking about the trial coming up for forging checks on his grandfather's account. She obviously assumed he was guilty and wanted to know if anyone else was involved.

The trial court instructed the jury herein: "Verbal statements or admissions should be received by you with great caution, as they are subject to much imperfection and mistake, owing to the person speaking not having clearly expressed his own meaning, or the person spoken to not having clearly understood the speaker. It frequently happens, also, that the witness, by unintentionally altering a few words or expressions really used, gives an effect to the statement entirely at variance with what the speaker actually did say."

The statement made by the grandmother was in effect an accusation of guilt. While the appellant did not specifically admit the commission of the crime, he made a statement utterly inconsistent with innocence. It was clearly relevant and admissible.

Appellant does not argue or seek to sustain his argument on the refusal of the trial court to declare a mistrial. Under our rules, it will not be considered.

The judgment is affirmed.

AFFIRMED.